IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LINDA AVILA,

      Petitioner,

v.

                                CRIMINAL ACTION NO.: 2:14cr108

UNITED STATES OF AMERICA,

      Respondent.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is a *pro se* Motion submitted pursuant to Title 28, United States Code, Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Petition") filed by Linda Avila ("Petitioner"). Both parties have submitted memoranda on the relevant issues; thus, the matter is ripe for adjudication. For the reasons discussed below, Petitioner's § 2255 Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Petitioner was named in a twenty-one count indictment on July 25, 2014. Count One charged Petitioner with Conspiracy to Defraud the Government with Respect to Claims, in violation of 18 U.S.C. § 286. Counts Two through Eleven charged her with False Claims, in violation of 18 U.S.C. § 287. Counts Twelve through Twenty-One charged her with Mail Fraud, in violation of 18 U.S.C. § 1341.

On November 17, 2014, Petitioner pleaded guilty to Counts One and Twelve. On May 20, 2015, the Court sentenced Petitioner to one-hundred-twenty (120) months imprisonment on Count One and twenty-four (24) consecutive months of imprisonment on Count Twelve, to be

followed by three years of supervised release and restitution in the amount of $7,283,343.61. The remaining nineteen counts were dismissed upon a motion by the United States.

On November 16, 2015, Petitioner filed the current motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C § 2255. ECF No. 40. On March 2, 2016, the United States filed its Response. ECF No. 51. The Court has also reviewed Petitioner's handwritten Reply, dated March 19, 2016.

Petitioner argues that her counsel was constitutionally ineffective for multiple reasons. First, Petitioner claims that she was "misadvised" on the terms of her plea agreement and that her counsel failed to file a timely appeal after sentencing. In addition, the Petitioner claims that she was suffering from a "mental disease or defect" that impaired her ability to fully cognize the nature of the charges against her and the consequences of pleading guilty. She argues that her attorney should have notified the Court of her condition and requested a competency hearing. Second, Petitioner asserts that her attorney failed to request a lesser included offense instruction. Lastly, the Petitioner contends that her attorney neglected to review the Presentence Report with her in violation of due process.

The United States asserts that the instant Petition ought to be rejected in its entirety because the Petitioner has failed to show that her former counsel provided unreasonably poor service as defined under *Strickland v. Washington*, 466 U.S. 668 (1984). The United States highlights statements that the Petitioner made under oath during her November 17, 2014, plea hearing and May 20, 2015, sentencing hearing as evidence that contradicts her claims that she received inadequate representation. Regarding Grounds Two and Three of the Petition, the United States argues that they lack sufficient evidence to investigate further.

## II. LEGAL STANDARDS

### A. Section 2255

The Petitioner seeks post-conviction relief available to federal prisoners under Section

2255 of Title 28 of the United States Code. The Section provides in relevant part:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside, or correct the sentence.

28 U.S.C. § 2255. By seeking to vacate a judgement of conviction, the movant bears the burden

of proving his or her claim by a preponderance of the evidence. *Miller v. United States*, 261 F.2d

546, 547 (4th Cir. 1958). *Pro se* filers, such the Petitioner in this case, are entitled to a more

liberal construction of their pleadings. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978),

*cert denied*, 439 U.S. 970 (1978) (providing that a *pro se* petitioner is entitled to have his petition

construed liberally and is held to less stringent standards than an attorney drafting the

complaint). When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the

motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief." 28 U.S.C. § 2255(b). Motions under § 2255 "will not be allowed to do service for an

appeal." *Sunal v. Large*, 332 U.S. 174, 178 (1947). As a result, issues already fully litigated on

direct appeal may not be raised again under the guise of collateral attack. Ineffective assistance

of counsel claims should be raised in a collateral motion instead of a direct appeal.

The Petition does not run afoul of the one-year statute of limitations time bar. The

relevant law, 28 U.S.C. § 2255(f), states that a defendant has a one-year period to file a Section

2255 motion. This period starts either (1) from the date on which the judgment of conviction

final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court , if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. It is undisputed that the Petitioner received final judgment of her case on May 21, 2015. ECF No. 36. She subsequently filed the instant motion on November 16, 2015, well within the statute of limitations.

**B. Standard for Ineffective Assistance of Counsel**

In order to succeed on a claim of ineffective assistance of counsel, the petitioner must satisfy the two-part inquiry outlined in *Strickland v. Washington*, showing that (1) that counsel's representation "fell below an objective standard of reasonableness (2) and that "deficient performance prejudiced the defense." 466 U.S. at 687-88. Both "prongs" of the *Strickland* test must be satisfied. If the Court determines that one prong does not apply, then the petitioner's claim of ineffectiveness of counsel cannot succeed. In order to prove prejudice, the petitioner must show that the attorney's representation did not fall within a "wide range of reasonable professional assistance" and that the poor performance had a material effect on the outcome of the case. The petitioner must also demonstrate a causal relationship between the defective representation, "making it probable that petitioner would be either acquitted or convicted of a lesser included offense." *Id.* at 694. Judicial scrutiny of an attorney's performance must be "highly deferential" and "indulge a strong presumption" that counsel's conduct did not fall outside of the objectively reasonable standard. *Id.* at 689.

4

Defendants who claim ineffective assistance of counsel after pleading guilty must meet an even higher burden. *See, e.g., United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007), *cert denied*, 552 U.S. 900 (2007). In such cases, the "prejudice" component of the *Strickland* test is modified. The defendant must not only show how counsel's deficient performance prejudiced his case, but also that "there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A defendant must convince the Court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). In order to make this showing, the defendant's "subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

### III. DISCUSSION

Petitioner makes a number of allegations against her former defense attorney. The Court however can discern three cognizable grounds of attack and will address each in turn. Part "A" combines a number of Petitioner's claims, including that her counsel failed to advise her of the potential consequences of pleading guilty and did not address her mental health issues with the Court. Part "B" addresses Petitioner's claim that her counsel neglected to seek a lesser-included offense instruction and allow her to more forcefully challenge her designation as "leader" of the crimes in question. Lastly, Part "C" covers Petitioner's claim that she did not review her Presentence Report prior to sentencing. Each Ground should be denied for the reasons stated below.

**A. Ineffective Assistance of Counsel: Failure of Counsel to Address Petitioner's Mental Incompetence, Advise her of Plea Consequences, and Promptly Appeal on her Behalf**

Petitioner asserts that she was denied effective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution, and therefore seeks a reduction in her sentence. In Ground One of her § 2255 Motion, she claims that her former defense attorney "misadvised" her on the length of her potential sentence and failed to file an appeal on her behalf. The Petitioner also contends that her conviction was obtained as a result of a defective plea, that she did not understand the nature of the proceedings before her due to a "mental disease or defect," and that her attorney neglected to request a competency hearing.

Petitioner first claims that her attorney provided her with false information about the length of her potential sentence. According to Petitioner, her counsel stated that she would receive a maximum of two-years imprisonment for her crime with a 5K1.1 sentence reduction under the Federal Sentencing Guidelines. Indeed a guilty plea obtained by deception or trickery would violate due process. *Smith v. O'Grady*, 312 U.S. 329 (1941); *Hawk v. Olson*, 326 U.S. 271 (1945). However, defense counsel simply denies making such a promise. Former Defense Counsel Affidavit at ¶ 2 and 4-5. And even if such a conversation took place between the Petitioner and her attorney, she nonetheless indicated to the Court that she understood the contents of her plea bargain and substantially agreed with its terms, which did not include any mention of the aforementioned promise. *See generally Fields v. Attorney Gen. Of Md.*, 956 F.2d 1290, 1297-99 (4th Cir.1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy") (citing *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977)). The Plea Agreement directed the Court to impose a sentence that would be "sufficient, but not greater than necessary," not that the

Petitioner would be given a specific cap on her sentence. The Petitioner stated to the Court that the Plea Agreement constituted the entire agreement she had with the United States.

A criminal defense attorney must provide sentence forecasts to the defendant in the course of representation, but such projections are inherently speculative and depend on the strength of then-existing evidence. *See, e.g.*, Plea Agreement at ¶ 4 ("any estimate of the advisory sentence range . . . the defendant may have received from the defendant's counsel . . . is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court"). The Court finds that counsel's behavior cannot fall below "an objective standard of reasonable" professional conduct when he merely forecasts a potential sentence given the available evidence. Nonetheless, whether or not counsel in fact told the Petitioner that she would only face two years imprisonment does not alter what was discussed in open court. The Petitioner signed and initialed each page of the Plea Agreement, indicating to the Court that she agreed with the terms including the potential sentence she would receive for her crimes. Plea Hr'g Tr. at 4:5-13, 5:8-10. She admitted that she had an opportunity to review the Plea Agreement and discuss each section with her attorney in preparation for the plea hearing. *Id.* at 3:23-25, 4:10-11. Finally, the Petitioner stated under oath that there were no other offers or promises made to her other than what was included in the Plea Agreement. *Id.* at 4:14-24. The terms of the Plea Agreement, including the advisory sentencing guideline range, were clear. The Petitioner had sufficient notice of the terms and did not voice concern that she had been promised something not included in the Plea Agreement.

To further buttress her ineffective assistance of counsel claim, the Petitioner argues that her attorney neglected to file a timely appeal. The Petitioner does not assert that she directed counsel within the statutory period to file an appeal. She claims that counsel "would not answer

calls nor letters." Mot. at 6. If that be the case, the Petitioner has failed to provide any evidence
of these repeated attempts at communication. The Court has reviewed only one post-conviction
request for an appeal: a June 27, 2015, letter written by the Petitioner to counsel (Exhibit C), and
deemed it untimely. The Petitioner submitted the letter some two weeks past the statutory
maximum to request an appeal. Fed. R. App. P. 4(b)(1)(A). Counsel admits that he
"inadvertently" failed to respond to the Petitioner's June 27th letter. Former Defense Counsel
Affidavit at ¶ 2. However, failing to respond to an untimely request for an appeal does not depart
from the "objective standard of reasonableness" required under *Strickland*. *See, e.g., Faison v.
United States*, 17 F. Supp. 3d 550, 553 (E.D. Va. 2014) ("[T]he Petitioner's [untimely] letter
cannot constitute an 'unequivocal instruction to file a timely notice of appeal'") (quoting *United
States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007)). Still, the Petitioner and defense counsel
both reviewed and signed the terms of the Plea Agreement, including any waiver of a right to
appeal. Plea Agreement ¶ 5; Plea Hr'g Tr. at 6:24-7:24. The Petitioner cannot claim that
counsel's lack of response to the June 27th letter unduly prejudiced her ability to appeal on time,
because she already agreed to waive her right to appeal as a condition of her plea bargain. *Roe v.
Flores-Ortega*, 528 U.S. 470, 484 ("a defendant must demonstrate that there is a reasonable
probability that, but for counsel's deficient failure to consult with him about an appeal, he would
have timely appealed).

    The Petitioner also attacks the legitimacy of her plea bargain, alleging that she had been
suffering from a "mental disease or defect" during the proceedings that impaired her ability to
fully understand the nature of the charges against her and the consequences of pleading guilty.
She also claims ineffective assistance of counsel because counsel did not "notify the Court" of
her defect and did not seek a competency hearing. A plea of guilty is considered constitutionally

valid as long as it is made "voluntarily" and "intelligently." *See Brady v. United States*, 397 U.S. 742, 748 (1970); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged . . . [h]e may only attack the voluntary and intelligent character of the guilty plea ...."). A guilty plea is intelligent and voluntary if it is "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. If it be determined that the Petitioner lacked mental awareness or had otherwise been legally incompetent during her guilty plea, she would have a valid collateral claim against her conviction.

The Court must also evaluate whether defense counsel had an obligation to investigate the competency of his client before allowing the case to proceed further. The Fourth Circuit has not ruled on this precise issue, but has held that such conduct would fall under the *Strickland* reasonableness test. *See Beck v. Angelone*, 261 F.3d 377 (4th Cir. 2001) (holding that counsel had acted reasonably under *Strickland* in not requesting a competency hearing because defendant did nothing to lead counsel to question his competency). Federal law provides that counsel may seek a competency hearing on behalf of the defendant, but the court *must* order a competency hearing *sua sponte* if there is "reasonable cause" to believe the defendant to be mentally incompetent. 18 U. S. C. § 4241(a); *United States v. Ernst*, 488 Fed. Appx. 667, 670 (4th Cir. 2012); *see also United States v. Morgan*, 559 F.2d 397 (5th Cir. 1977), *cert denied* 435 U.S. 926, *reh'g denied* 435 U.S. 1018 ("determination of whether there is reasonable cause to have defendants subjected to examination to determine mental competency is left in large part to discretion of district court"). It appears that the onus for seeking a psychological evaluation of the defendant ultimately falls on the district court, not the attorney.

The Court cannot find any evidence that either the Petitioner had been suffering from a mental disease or defect at the time of her guilty plea or that her attorney fell below professional standards by not requesting a competency hearing. During the Petitioner's plea hearing, the Petitioner repeatedly confirmed that she understood the questions posed to her by the Court. *E.g.* Plea Hr'g Tr. at 6:24-7:5. She further demonstrated her mental fortitude by stating that she understood the contents of the Plea Agreement and had no discrepancies with the terms. Plea Hr'g Tr. 5:8-10. In addition, the Petitioner denied that she had been hospitalized for a mental illness or had been taking prescription medication that would have altered her cognitive abilities. Plea Hr'g Tr. at 3:13-22. In her Presentence Report, the Petitioner admitted that she suffered from depression and took medication for it, yet she never made an objection that the disease affected her ability to understand her case. Simply because the Petitioner suffered from depression does not necessarily mean she was incompetent. *See Hall v. United States*, 410 F.2d 653, 658 (4th Cir. 1969) (holding that in the determination of defendant's competency to stand trial, the presence of "some degree of mental illness is not to be equated with incompetence to be sentenced").

Although the defendant's representations made at the time of the guilty plea are not dispositive with regard to the issue of voluntariness, they "constitute a formidable barrier in any subsequent collateral proceedings" and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Marshall v. Lonberger*, 459 U.S. 422, 437 (1983) (plea is presumed valid in a habeas proceeding when the pleading defendant was represented by counsel). Once again, after personally observing the Petitioner's conduct, the Court did not have "reasonable cause" to suspect that the Petitioner could not comprehend her case. The Petitioner made no attempt to notify the Court or her

attorney of her condition, in spite of numerous opportunities to do so. Therefore the Court finds

that the Petitioner to have pleaded guilty voluntarily and intelligently. Without any notice of the

Petitioner's alleged mental health problems, counsel did not prejudice her case by failing to

investigate her condition. He had no objective basis to seek a competency hearing.

**B. Ineffective Assistance of Counsel: Failure of Counsel to Seek a Lesser Included
    Offense Instruction**

Petitioner claims that her attorney provided ineffective assistance by failing to seek a lesser

included offense instruction and as she puts it, "[T]hat I myself needed to defend myself, and

show my true self, in regard to I was not the leader/organizer and nor did I ever take advantage

of another human being. And the courts to hear my plea of remorse." Mot. at 6. As the United

States discussed in its Response, a lesser included offense instruction usually involves an

instruction to the jury, yet this case never went to trial. Govt. Response at 12. Counsel could not

have sought a lesser included offense instruction because the Petitioner waived her right to a jury

trial.

By rejecting her role as a "leader/organizer" in Ground Two and highlighting her general

feelings of remorse for what she has done, it appears that the Petitioner faults her attorney for not

arguing for a lesser guideline range. A review of the case materials reveals quite the opposite.

Counsel did in fact make the argument for a lesser sentencing guideline as shown in the

Presentence Report. Specially, the Petitioner's crime warranted a 4-level enhancement under the

Federal Sentencing Guidelines for her role as the leader in the conspiracy, yet her attorney

managed to have that reduced to a 3-level enhancement. Sentencing Hr'g Tr. at 4: 3-5:23.

Counsel further addressed how the Petitioner expressed regret for her crime and how she had

accepted responsibility for the damage she caused. *See* Position of the Defendant with Regard to

Sentencing (ECF No. 31) at 3 ("Ms. Avila . . . has accepted responsibility for [her] actions, [and]

is extremely remorseful"). The United States consequently made the necessary reductions in her

offense level computation. The Court designated the Petitioner as a "leader" of the conspiracy

irrespective of Counsel's representation. Petitioner used her tax preparation skills and status as

an authorized notary to notarize fraudulent W7s in order to obtain Individual Taxpayer

Identification Numbers (ITINS). The conspiracy could not have taken place without her aptitude.

She had the knowledge and ability to run the scheme and direct others to do her bidding.

Although her attorney argued that her co-conspirators shared in leadership responsibilities, the

Court finds that the designation of "leader" is an appropriate characterization of Petitioner and

her involvement in the crime.

Petitioner properly invoked her Fifth Amendment right not to testify in her own case. She

cannot be faulted for this. However, the Court gave her multiple opportunities during the

proceedings to make comment, ask questions, and to "show her true self" as she now desires, yet

she chose to remain silent. *See, e.g.*, Sentencing Hr'g Tr. at 25:21-23 ("It's the Court's

understanding that you do not wish to make any comment," to which the Petitioner stated, "Yes,

sir"). Once again, a defendant is bound by the representations made under oath during a plea

colloquy. *See Fields*, 956 F.2d at 1297. Ground Two of the Petition is not supported by the

record and must therefore be denied.

**C. Ineffective Assistance of Counsel: Failure of Counsel to Review Presentence Report with Petitioner Before Plea Hearing**

The Petitioner claims that she did not see her Presentence Report ("PSR") until after she had been sentenced and sent to prison. In addition, she claims that her attorney did not review the document with her and advise her of her rights. Mot. at 8. The record suggests otherwise. On May 14, 2015, almost a week before the sentencing hearing, defense counsel submitted a Position of the Defendant with Regard to Sentencing, stating that, "The defendant has reviewed the presentence report . . ." ECF No. 31. Assuming for the Petitioner's sake that no such review took place, she had ample opportunity to notify the Court during sentencing that she had not read her PSR nor agreed with the facts contained therein. She stated before the Court that she had spoken with her attorney and fully prepared for the sentencing hearing. Sentencing Hr'g Tr. at 3:14-17. Without evidence to the contrary, the Court rejects the Petitioner's claim that she did not review her PSR until after she had been sentenced.

## IV. CONCLUSION

For the reasons stated above, the Petitioner's Motion to Vacate, Set Aside or Correct Sentence is hereby **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the Court is also required to issue or deny a certificate of appealability, which may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's habeas petition on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Petitioner does not satisfy this standard; accordingly, the Court **DENIES** a certificate of appealability. Although Petitioner may not

appeal the denial of her § 2255 Motion without a certificate of appealability, she may seek one from the United States Court of Appeals for the Fourth Circuit.

In addition, the Court **DIRECTS** the Clerk to send a copy of this Order to Petitioner, her former counsel, and to the United States Attorney.

The Court **ADVISES** Petitioner that she may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's dates. The Court Directs the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
July /14, 2016

Raymond A. Jackson
United States District Judge

14