

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**LINDA AVILA,**

**Petitioner,**

v.                                                                   **Criminal No. 2:14-cr-108**

**UNITED STATES OF AMERICA,**

**Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Linda Avila's ("Petitioner") Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 66. The Government opposed the motion and Petitioner did not reply. ECF No. 74. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 25, 2014, Petitioner was named in a twenty-one count Indictment returned by a Grand Jury charging her with Conspiracy to Make False Claims, in violation of 18 U.S.C. 286 (Count One); False Claims Against the United States, in violation of 18 U.S.C. 287 and 2 (Counts Two through Eleven); and Mail Fraud, in violation of 18 U.S.C. 1341 (Counts Twelve through Twenty-One). ECF No. 3. On November 17, 2014, Petitioner pled guilty to Count One, charging her with Conspiracy to Defraud the Government, in violation of 18 U.S.C. § 286, and Count Twelve, charging her with Mail Fraud, in violation of 18 U.S.C. § 1341. ECF Nos. 16, 17 According to the Statement of Facts, Petitioner devised a scheme to obtain money from the federal government by filing false tax returns in the names of other persons (whether real or fictitious) in order to claim a tax refund from the Internal Revenue Service (IRS). ECF No. 18 at ⁋ 2. Between June 2008 and February 2012, Petitioner and her co-conspirators were responsible for

1

approximately $7.2 million in fraudulent tax refunds. *Id.* According to the Presentence Report, Petitioner, a notary, was assessed an enhancement for abuse of a position of public or private trust or use of a special skill. ECF No. 73 at ¶ 27. Petitioner was assessed a total offense level of 33 and criminal history category of I because this was her only criminal offense on record. Accordingly, Petitioner's guideline range was 135 to 168 months' imprisonment. On May 20, 2015, Petitioner was sentenced to a total of 144 months imprisonment, followed by 3 years supervised release, and ordered to pay a restitution in the amount of $7,283,343.61. ECF Nos. 32, 34. To date, Petitioner has served approximately 50 percent of her sentence and she is currently incarcerated at FCI Hazleton, in West Virginia, with a projected release date of January 23, 2026.

On September 14, 2020, Petitioner filed a motion for compassionate release through counsel. ECF No. 66. On February 24, 2021, the Government opposed Petitioner's request. ECF No. 74. Petitioner requests compassionate release because of the ongoing COVID-19 pandemic and her underlying health conditions places her at a higher risk for serious illness if she contracts the virus. ECF No. 66.  At age 56, Petitioner suffers from coronary heart disease, hyperlipidemia, morbid obesity, post-traumatic stress disorder, arthritis, and depression, and she has a history of skin cancer. *Id.* at 2. Given the pandemic and her underlying health conditions, Petitioner requests that this Court grant her compassionate release and allow her to serve the remainder of her sentence on home confinement with her daughter in South Carolina.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

2

warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all

provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust her administrative remedies prior to bringing her motion with the Court. On April 30, 2020, Petitioner sent a Request for Reduction in Sentence

Form to the Warden at Hazelton FCI. On May 18, 2020, the Warden denied her request. *See* ECF No. 66 at Exhibit 1. Petitioner filed her Motion for Compassionate release on September 14, 2020. Thus, more than 30 days passed since Petitioner filed her request with the Warden.

**B. Petitioner's Compassionate Release Request**

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify her sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Similar to the above cases, Petitioner's compassionate release is justified under the circumstances.

First, Petitioner shows a particularized susceptibility to COVID-19. As indicated in her medical records, Petitioner has a medical history of skin and uterine cancer, Type II Diabetes, gastroesophageal reflux, hypertension, arthritis, acute uri NOS (a contagious infection of your upper respiratory tract), coronary atherosclerosis (coronary artery disease), hyperlipidemia, dysmetabolic syndrome, morbid obesity (BMI over 36), and depression. *See* ECF No. 69 (Sealed). Based on her BOP medical records, Petitioner has also been assessed for Major Depressive Order, Posttraumatic Stress Disorder, Osteoarthritis, prediabetes, Bladder disorder, Bradycardia, and Vitamin B12 deficiency. ECF No. 69 at Exhibit 1. At the time the Presentence Report was

completed, Petitioner reported being prescribed tramadol, topical Voltaren, Mobic, metformin, Nexium and Zoloft. ECF No. 73 at ¶ 56 Petitioner also currently takes daily medication for her anxiety. *Id.* As reflected in her Presentence Report, she was diagnosed with skin cancer in 1998 and uterine cancer in 2013. *Id.* at ¶ 53, 54. Petitioner had a total hysterectomy in 2013. *Id.* Moreover, according to medical records from Shore Memorial Hospital in Nassawasox, Virginia, on September 24, 2009, Petitioner was found to have L4-5 degenerative disc disease and facet joint osteoarthritis. *Id.* at ¶ 55. According to the Centers for Disease Control and Prevention, individuals with cancer, obesity (body mass index [BMI] of 30 $kg/m^2$ or higher but < 40 $kg/m^2$), Type 2 diabetes, and coronary artery disease are at an increased risk for severe illness from COVID-19. [1] Furthermore, individuals with hypertension (commonly known as hyperlipidemia) or high blood pressure might also be at an increased risk for severe illness if they contract the virus. Thus, the combination of Petitioner's underlying medical conditions places her at increased risk for serious illness, even death, if she contracts COVID-19.

Second, Petitioner shows a particularized risk of contracting the disease at her prison facility. As of March 11, 2021, the BOP has reported a total of 4 current (69 recovered) positive cases of COVID-19 for inmates and 11 current (150 recovered) for staff at Hazelton FCI.[2] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[3] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html

[2] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/

[3] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that Petitioner has a particularized risk of contracting the disease, especially whereas here, Petitioner suffers from serious underlying health conditions that place her at an increased risk for severe illness if she contracts COVID-19. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for her underlying offense remain unchanged. The Court does not de-emphasize the severity of her offense and notes that between June 2008 and February 2012, Petitioner lead a scheme, and recruited others, to defraud the Internal Revenue Service (IRS). ECF No. 73 at ¶¶ 17, 28. Petitioner and her co-conspirators were responsible for approximately $7.2 million in fraudulent tax refunds. ECF No. 18. Petitioner was also assessed a two-level enhancement for abuse of a position of public or private trust or use of a special skill. ECF No. 73 at ¶ 27. In all, Petitioner was assessed a total offense level of 33. Petitioner was sentenced to 144-months followed by three years of supervised release.

After nearly six years of imprisonment, Petitioner has completed approximately 50 percent of her sentence and has demonstrated evidence of her rehabilitation. Notably, Petitioner has completed nearly forty educational courses, various group therapy sessions, completed drug education, and has worked as a laborer since January 2021. *See* ECF No. 74 at Exhibit 1. Moreover, Petitioner has been incident-free during the entirety of her incarceration, with the exception of two incidents. The first was in July 2016 and the second was in November 2019, which was as a result

of a PTSD episode while she was at Alderson Prison Camp. However, Petitioner has remained incident free since November 2019. With respect to her release plan, Petitioner has maintained contact with her family, has a strong support system upon release, and plans to reside with her daughter in South Carolina. ECF No. 66 at 23. Additionally, Petitioner's offense was a non-violent offense and, thus, she was assigned criminal history category I, with zero criminal history points. The Court also notes that Petitioner is not at high risk of reoffending because she has no prior criminal record, either as a juvenile or adult. *See* ECF No. 73 at ¶¶ 33-38. After weighing the evidence, the Court finds that Petitioner is not a danger to the safety of any other person or to the community. Therefore, based on the aforementioned factors, the Court finds that Petitioner qualifies for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **GRANTED**. Petitioner's sentence is reduced to **TIME SERVED**. Upon release, Petitioner shall be on supervised release as previously ordered in her criminal judgment, for three (3) years, with a special condition of twenty-four (24) months home confinement. With respect to Petitioner's home confinement conditions, the Court orders as follows:

1. Petitioner shall be on Home Detention, which shall include either electronic monitoring or GPS monitoring at the Petitioner's expense, for a period of 2 years. During this time, Petitioner shall remain at Petitioner's place of residence except for employment, medical appointments, and other activities approved in advance by the probation officer.
2. While on home detention, Petitioner shall maintain a telephone at her place of residence without party lines, telephone answering machines, a modem, call forwarding, caller ID, call waiting or any other devices or services that may interfere with the proper functioning of the electronic monitoring equipment for the above period. Petitioner shall wear an electronic monitoring device, follow electronic monitoring procedures, and pay the cost of electronic monitoring, all as directed by the probation officer.

The Bureau of Prisons is **DIRECTED** to release Petitioner from custody within **TEN (10) DAYS** of the date of this Order.  Petitioner is **DIRECTED** to contact the United States Probation Office within seventy-two (72) hours from the day of her release.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
March 18, 2021

UNITED STATES DISTRICT JUDGE

9